## No. 11,176.

### JAMES LEWIS DODDS VS. GEORGE A. LANAUX.

### EDWARD G. ORTENBACH VS. S. M. ST. MARTIN, SHERIFF, ET AL.

1. The legal mortgage in favor of a minor in a partition sale attaches to the property formerly owned by the tutor.

Dodds vs. Lanaux.

2.  Property sold to effect a partition contradictorily with the minor, and the co-proprietor who purchases the property retains in his hands the amount due the minor, and stipulates a special mortgage to secure the same, the lega mortgage on the half of the property against his tutor, which rested on the property before it was acquired by the party holding in indivision with the minor, and the special mortgage can co-exist. There is no inconsistency in the two claims, as they are distinct obligations, springing from distinct sources, and secured by separate and distinct mortgages.

5.  The special mortgage, containing the *pact de non alienando*, can be enforced against the vendee of the mortgagor, who assumes the mortgage debt.
    The mortgagee in enforcing his special mortgage does not take the place of the vendor and become a warrantor to the vendee.

4.  The *pact de non alienando* does not prevent the mortgagor from selling the property. Its effect is to permit the seizure of the property by the mortgagee in the hands of third persons by proceedings directly against the mortgagor without notice to third persons.
    In the executory process the plaintiff who holds a legal mortgage on one-half the property, on the whole of which he has a special mortgage, can not in enforcing his special mortgage require the proceeds to be distributed so as to also satisfy his general or legal mortgage.

APPEAL from the Twentieth District Court, Parish of Ascension. *Guion, J.*

*R. N. Sims* and *G. A. Gondran* for Plaintiff and Appellee:

1.  By virtue of the *pact de non alienando* in the sheriff's deed and Lanaux's conventional assumption, in the act of sale to him from the adjudicatee at the sheriff's sale, of the debt of $2437.50 mentioned in said sheriff's deed as being due to Dodds, then a minor, the latter, after emancipation, was entitled to an order of seizure and sale against Lanaux. 33 An. 759; 19 An. 125; 1 Rob. 135; 8 An. 267; 15 La. 184; 16 La. 223; 1 La. 39; 44 An. 206, and cases cited.

2.  Lanaux makes no appearance or defence. The opponent, Ortenbach, discloses no interest or impending injury. His express waiver of the mortgage certificate in the act of sale to him from Lanaux was tantamount to an acknowledgment of the existence of mortgages on the property therein described. Long vs. Martin, 7 An. 579; 14 An. 339. As a third possessor, *quoad* the legal mortgage debt of $5104.85, he would on paying the same be fully subrogated by effect of law to Dodds' mortgage rights. C. C. 2161; 36 An. 685; 32 An. 202; 31 An. 859; 12 R. 206.

3.  Under the terms and conditions of the partition sale and the sheriff's deed, the price of the sale accruing to Dodds as joint owner was secured by special mortgage and vendor's privilege on the whole property sold. C. C. 1339-40-41-43, 2616-17; 12 An. 78; Gay vs. Hébert, 44 An. 207. Decisions in 33 An. 425, 34 An. 1046 and 35 An. 547 applicable only when property purchased by heir at partition sale is paid for with his heritable share.

4.  The acceptance by a third person of a mortgage or privilege stipulated in an act of sale in his favor does not impose on him the obligations of vendor and warrantor. C. C. 1902; 16 An. 198; 31 An. 415; 38 An. 585; 7 An. 67; 12 An. 699; 24 An. 603. Also distinction drawn between the rights of seller and third holder of vendor's privilege respecting enforcement of resolutory condition.

Dodds vs. Lanaux.

5. Equity the basis of estoppel. In asserting his legal mortgage plaintiff merely states a fact which the law and the public mortgage records have continuously proclaimed as true since a time long anterior to the acquisition by Lanaux or Ortenbach of any rights on the property affected by it.

6. The legal mortgage in favor of the minor at the time of the partition sale attached to the property formerly owned by his tutrix. That moitgage continued to adhere to the property, and could not be removed or enforced until after the termination of the functions of the tutrix. 6 R. 51; 33 An. 49; 5 An. 497; 12 An. 78, 361; 13 An. 508; 19 An. 55.

*Edward W. Pugh, contra,* cited: 42 An. 747; 2 An. 478; 23 An. 442; 34 An. 1126; 33 An. 1126; 35 An. 142; 1 An. 307; 32 An. 949; 42 An. 746; 21 An. 11; 21 Wall.; 1 An. 482; C. P. 35; C. C. 1844; 6 Toul., Nos. 150, 153; Pothier, Obligations, Nos. 58, 71, 480; Mourlon, Vol. 3, p. 278, Art. 1686; 34 An. 165; Laurent, Vol. 30, p. 6, Sec. 2, p. 18, Sec. 16; Trop. Priv. and Hyp., No. 65, p. 595; Laurent, Vol. 30, p. 11, Secs. 9, 10; Pont. Priv. 1, tit. 28, Secs 190, 145, 187; 32 An. 287, 828; 17 An. 256; 17 La. 65; 33 An. 967; 31 An. 415; 38 An. 360; 19 An. 35.

The opinion of the court was delivered by

McENERY, J. The plaintiff, an emancipated minor, alleges in his petition that he is the sole issue of the marriage of Amelia Bouchereau and the late James A. Dodds: that in the matter of Robert N. Sims vs. Mrs. James A. Dodds, on the docket of the Twenty-second Judicial District Court for the parish of Ascension, an order of sale issued, and the sheriff, on the 6th day of February, 1886, sold at public auction, according to law, a plantation situated in the parish of Ascension, on the right bank of the Mississippi river, six miles above the town of Donaldsonville, measuring fifteen arpents front by a depth of forty arpents, bounded above by the lands of Raphael Anthony and below by Pierre Fevrier and others, which was adjudicated to Robert N. Sims for the price of $6500, of which amount the said purchaser, according to the terms and conditions of sale, paid in cash the sum of $4062.50 and for the balance of the price, amounting to $2437.50, the whole of which belonged to the petitioner as joint owner of the property sold, the purchaser bound himself to pay the same to petitioner at the date of his majority, or emancipation, in pursuance to the conditions of sale, with interest from said date at the rate of 8 per cent. per annum payable annually. The purchaser,

19*

to secure said credit portion, interest and attorney's fees, did specially mortgage said property to the petitioner, who also retained on the property the vendor's lien and privilege.

That Sims, the adjudicatee of said property, sold the same to Geo. A. Lanaux, and that the said Lanaux assumed in the act of sale the above amount due the petitioner. The interest has been paid on the mortgage debt to 6th February, 1890.

The petitioner further shows that he has an additional claim on said property for the sum of $5104.85, with legal interest from the 24th March, 1892, and that he is entitled to a mortgage on all the immovable property owned by his mother at the date of her appointment as tutrix; that at said date she owned one undivided half of the Home place, the property above described, and the same was covered and affected by the legal and general mortgage in his favor resulting from said tutorship. The petitioner, while enforcing his mortgage rights under the sheriff's deed of 6th February, 1886, to R. N. Sims, reserves the rights on said property resulting from said tutorship from the 29th March, 1876.

In the event of the seizure and sale of the property he asks that the funds be regulated and distributed conformably to the standing and rank of said mortgages.

He prays that the property described in the sheriff's deed to Sims, 6th February, 1882, be sold in default of payment to satisfy his mortgage debt.

The property was seized and advertised to be sold. Edward J. Ortenbach prayed for and obtained an injunction arresting the sale.

In his petition he alleges that he bought said property from Geo. A. Lanaux, 1st September, 1890; that the sheriff, purporting to act under an order of seizure and sale issued by the Twentieth Judicial District Court, had seized the property and advertised it for sale, and he denies that said court issued or granted the order, and that he was without power or authority to act in the premises. Should this objection to the writ be overruled, he declares that a sale was made by the sheriff of this property, in the case of R. N. Sims vs. Mrs. Dodds, tutrix of J. L. Dodds, the minor Dodds being the owner of an undivided half of said property. At that sale Sims became the purchaser, and a part of the consideration was that R. N. Sims was to pay said minor the sum of $2437.50, with interest from the date of sale, with vendor's privilege on the property. In the sale to-

Lanaux he assumed to pay, as part of the purchase price, this obligation of Sims, and the purchaser from Lanaux, Ortenbach, plaintiff in injunction, obligated himself to do the same thing, securing said minor's debt by the vendor's privilege on the whole property. He avers that he has always been ready and willing to pay the amount of said obligation to plaintiff resulting from said assumption, but that he demands of said Dodds, the plaintiff, that he will give to him a full and clear receipt of all claims of the indebtedness of said property to him.

Referring to plaintiff's legal mortgage as set forth in his petition, he avers that he occupies the position of vendor and warrantor of the property; that he was originally the vendor, and as such he is estopped from setting up or claiming any mortgage against the property other than for the price of sale of the property to Sims, and that the plaintiff has fully recognized his title by his suit to enforce the mortgage against Lanaux, reserved in the sale of sheriff to Sims, 6th February, 1886. He denies the existence of the legal mortgage resulting from the tutorship. He further states that there is a judgment of Melancon against plaintiff, rendered against his mother individually and as tutrix, 9th September, 1885, which affects the property, and which plaintiff should pay before attempting to enforce his mortgage.

All of these facts, he alleges, constitute a cloud upon the title to the property, and as vendor and warrantor, said Dodds, the plaintiff, is bound in law to quiet and maintain him in peaceable possession of the property.

There was judgment for plaintiff and the defendant appealed.

The first ground for the injunction was abandoned in the lower court, and has not been urged in this. As there is no force in it, it will not be recessary to discuss it.

The facts admitted by counsel are as follows:

"James A. Dodds died in the parish of Ascension on the 20th day of November, 1875. His succession was opened in said parish and an inventory with appraisement was made of the property belonging to his succession and to the community of acquets and gains formerly existing between him and his wife, Emilia Bouchereau, showing property to the amount and value of $11,458.74, which inventory embraced among other things the plantation seized in the present suit. This inventory was filed in court on the 13th o

December, 1875, and on the 14th day of December, 1875, a correct abstract thereof was recorded in the mortgage book of the parish of Ascension.

" And on the 14th day of December the said widow was duly appointed and confirmed as natural tutrix of her minor son, James Lewis Dodds, sole issue of her marriage with said deceased.

" She qualified as such and letters of tutorship were issued to her on said day.

" On the 1st of August, 1885, all of the right, title and interest of Widow Dodds in and to the Home plantation was sold at sheriff's sale under a writ of *fi. fa.* in the suit of B. Lehman & Bro. vs. Mrs. James A. Dodds, and said interest, consisting of the undivided half thereof, was adjudicated to R. N. Sims for the price of $335, part of which he paid cash and the balance he retained as owner of the judgment under which the execution issued. On the 22d of August, 1885, Sims, the purchaser of the widow's half of the plantation, brought a suit against Widow Dodds, as tutrix of her minor son, for a partition of the property held in common between him and said minor. A decree of partition was subsequently rendered ordering a sale of the property, and the same was sold on the 6th of February, 1886, and adjudicated to R. N. Sims, as recited in the sheriff's deed of sale filed in evidence. On the 18th of April, 1891, the plaintiff, J. L. Dodds, was emancipated by a judgment of the District Court of Ascension. On the 24th of March, 1892, Widow Dodds filed her final account of tutorship, showing indebtedness of $5104 to her son.

" This account was approved by the latter, was duly homologated and on the said 24th March, 1892, a final judgment was rendered against the tutrix in favor of her son for said sum, $5104, with five per cent. interest from date thereof, with recognition of the general mortgage in his favor on all the property of his tutrix from the date of its registry, 14th December, 1875. Widow J. A. Dodds, after the sheriff's sale in the suit of B. Lehman & Bro. vs. Mrs. J. A. Dodds, owned no property and has acquired none since that time."

The proposition of the plaintiff in injunction is that he became the subrogee of Lanaux, and stands precisely in his shoes, and that Dodds, claiming through and under Sims, has no greater right than Sims would have had. The measure of Dodds' right against Lanaux is fixed by the right of Sims against Lanaux. Upon this hy-

pothesis his argument is based.  He contends, that Dodds could ignore any and all alienations of the property made by Sims, and that the property was still in his possession, and at the moment he selected Lanaux as the party against whom he proceeded, he ratified the sale to Lanaux and made Sims' act, so far as the violation of the *pact de non alienando*, his own.

In this way he made the contract of sale from Sims to Lanaux his own, by ratification, became Lanaux's vendor, and therefore, the warrantor of his title, and of the title of Ortenbach.

From this springs his right to assert the vendor's lien and privileges, and not from the partition sale in which Sims became the owner of the entire property, and in the deed to which the vendor's privilege was retained in favor of Dodds.

At the partition sale, Sims a coproprietor, obtained title to the whole property, to which he had before the partition sale an undivided interest in the whole, and the sale only made him the owner of the entire property to which he had previously an undivided interest, his copartner receiving a portion of the money that the property brought at the licitation as an equivalent for his undivided interest.

In other words, Sims was not a purchaser of the property, as his co-proprietor never had title to the entire property, but only the right to receive a portion of the money it brought by licitation to effect a partition.

We have followed closely, and examined with care, the able brief of the counsel for Ortenbach, but from the facts in the record we are unable to agree with him as to the effect of the suit of plaintiff Dodds against Lanaux.  We do not think it necessary to discuss whether or not Sims had a right to grant the vendor's privilege to plaintiff, as the mortgage stipulates that for the amount due him, the plaintiff, a special mortgage is granted to secure the same.   He unquestionably had in the deed from the sheriff to Sims a special mortgage retained in his favor.  The sheriff's deed to Sims recites: "The undivided half cash, and the other undivided half, one-fourth cash on the day of sale, and the balance payable at the majority or emancipation of the minor, James Lewis Dodds, the purchaser giving approved security *in solido* to the satisfaction of the tutrix, with special mortgage and vendor's privilege with the *pact de non alienando* on the property sold, until final payment, and the obligation of

paying eight per cent. interest annually on said balance to said tutrix, the property to remain *specially mortgaged* for the security, for the payment of said credit instalment and the interest thereon as aforesaid," etc. In the petition for the order of seizure and sale, the deed is made a part of it, which also recites " that in order to secure the payment of said credit portion of said purchase price and the interest thereon   *   *   *   a vendor's lien and privilege was retained in petitioner's favor on the property sold, and the said *purchaser, in the authentic deed of sale, did specially mortgage and hypothecate said property* in petitioner's favor and bound him to make no disposition of said property to the prejudice of said act of adjudication, said *mortgage* and privilege securing said credit portion of the purchase price of said property."

If, as contended by the plaintiff in injunction, no vendor's privilege could result from the sale at the partition sale where one of the coproprietors became the purchaser, the stipulation in the act of such a privilege could not create it, as privileges spring directly from law and not from the conventions of the parties. Therefore, if the vendor's privilege be stricken from said deed, the special mortgage securing the credit portion in favor of the minor still existed. That Sims, being the owner of the entire property, had a right to grant such a mortgage can not be denied.

The sale by Sims of the property, notwithstanding the *pact de non alienando*, could not by any process of reasoning make the holder of the special mortgage a vendor, standing in Sims' place, when he has recourse to his (Sims') vendee to enforce the payment of the mortgage. There was no violation of any contract in the sale, the ratification of which could make the mortgagee, enforcing his rights, a party to the contract between the mortgagor and mortgagee.

There is no violation of contract by the sale of property mortgaged with the *pact de non alienando* stipulated in the act of mortgage. Such a stipulation does not prevent the mortgagor from selling the property; its only effect being to permit the seizure of the property by the mortgage creditor in the hands of third persons by proceedings directly against the mortgagor, without notice to third persons. Bank vs. Miller, 44 An. 199.

In the sale from Sims to Lanaux, in the deed it is stipulated, " and for the balance of the purchase price, say the sum of $2037.50, the present purchaser does hereby assume to pay to the discharge

of the present vendor the obligation contracted by said vendor in favor of the minor, James Lewis Dodds, for the amount of $2437.50, being the amount retained by the present vendor to pay the minor, James Lewis Dodds." The deed from the sheriff to Sims is made a part of this deed.

Lanaux assumed the mortgage in favor of Dodds, and thus took the place of the original mortgagor and could be proceeded against directly.

But the proceedings are not attacked for want of formality, or for the want of proper parties against whom they should be directed.

The plaintiff, we conclude, had a valid special mortgage on the property to recover the amount due him, to be paid at his majority, or when he was emancipated.

His attempt to enforce this mortgage could not impose upon him any conditions not mentioned in the contract or act of mortgage.

He can not, therefore, be made to assume the obligations of warrantor in a contract of sale between the mortgagor and the vendee.

If he had any rights on the property independent of his special mortgage, and not inconsistent with it, he did not relinquish them by enforcing his mortgage debt.

Dodds, the plaintiff, was a minor when this special mortgage was executed in his favor to secure the amount due him for his portion of the property held in indivision between him and Sims. His mother's part of this property had been sold under execution, and Sims became the purchaser, the minor owning one undivided half and Sims the other. Dodds had since 1875 a recorded legal mortgage against his mother's interest in the property.

In 1891 Dodds, the minor, was emancipated, and in March, 1892, the final account of the tutorship was filed and homologated, and judgment was rendered in favor of the emancipated minor against his mother, tutrix, for the sum of $5104.85. The legal mortgage burdened the property when in the mother and tutrix's possession, and when Sims became the purchaser and owner it rested on his half of the property. We do not understand that the existence of this mortgage is seriously contradicted.

From the statement of facts it is evident that the legal mortgage has never been cancelled. It was unaffected by the several sales heretofore mentioned. During the minority of Dodds it could only

have been cancelled by a special mortgage on other property by the advice of a family meeting. Life Association vs. Hall, 33 An. 49; Fleetwood vs. Bordis, 12 An. 55; Massey vs. Steeg, 12 An. 78; McHugh vs. Stewart, 12 An. 361; Lecarpentier vs. Lecarpentier, 5 An. 497.

The special mortgage and the legal mortage were in no way connected, and were independent obligations, growing out of different and distinct transactions.

The first was to secure the minor for property owned in his own right which had been sold, and the second was the result of the management of his property by his tutor, being a mortgage on her property to secure her indebtedness to the minor.

There was no inconsistency in the ownership in the same individual of these separate and distinct obligations. He owned two distinct debts, secured by two different securities. The one did not include the other. The one could be enforced without affecting the other.

Ortenbach acquired the motrgaged property from Lanaux, and assumed the special mortgage in favor of the minor Dodds.

He bought the property affected by the legal mortgage. It was therefore unreasonable to demand that before he paid the special mortgage assumed by him that the emancipated minor should surrender the legal mortgage resting on one-half the property.

The Melancon judgment was rendered against the tutrix individually and as tutrix. The plaintiff in injunction has not paid this judgment, and there is therefore no legal reason why he should arrest the sale for a claim which he has not paid. The judgment creditor is silent, and it does not appear that he has in any way authorized the plaintiff in injunction to collect this judgment for him.

The plaintiff, Ortenbach, can suffer no injury from any decree entered herein. He acknowledges owing the bebt due the minor, which he assumed and made a conditional tender of the same.

In the sale from Lanaux to Ortenbach the latter has full warranty against "all debts, claims, mortgages, privileges, taxes or incumbrances whatsoever." The price of the property was $12,500; $1062.50 was in cash, and the balance on terms of credit, payable one, two and three years from date, 1st September, 1890. The principal and interest retained on the credit price will be sufficient to pay the claims of plaintiff. It is significant that Lanaux makes no

complaint, and there is no holder of the mortgage notes, if they have ever been transferred, who complains.

The proceedings were arrested by injunction and the allegations were traversed, but the issues were (1) whether the plaintiff could enforce his legal mortgage on the property, of which it was alleged he was vendor and warrantor, the right to do which he had reserved in his petition for executory process; (2) whether plaintiff could enforce his mortgage without satisfying the judgment which was recognized of Melancon vs. Tutrix, Individually and as Tutrix. The amount due the minor and recognized by special mortgage is admitted. The tender of the amount acknowledged to be due was conditional, that he would give full acquittance for the legal mortgage and the Melancon judgment.

The appellee has filed a motion for an amendment of the judgment so as to give him the absolute right to enforce the legal mortgage in the executory proceedings out of the proceeds of the sale of the property affected by it to the amount of $5104.50, as prayed for in his answer to the injunction suit.

In executory proceedings the plaintiff can obtain the writ of seizure and sale only on authentic evidence which imports a confession of judgment in favor of the creditor.

In the assumption by Lanaux and Ortenbach there was no promise to pay this legal mortgage evidenced by authentic act. No order therefore in the petition for the the writ of seizure and sale could be granted, with reference to this legal mortgage, either as to the property or the future distribution of the proceeds.

The remedy is pointed out by law for the exercise of rights upon the proceeds of the sale, or for the enforcement of the legal mortgage against the property.

The prayer of the petition is for the sale of the property, in default of payment of the sum due the minor, secured by special mortgage and his rights under the legal mortgage against the property affected by it, or on the proceeds to be reserved.

We interpret the judgment as responsive to this prayer. The plaintiff has obtained all the relief he prayed for, or which could be given him by executory process. His rights against the property or its proceeds are reserved.

The judgment in effect decrees:

1. That the sheriff proceed with the execution of the writ of seizure and sale.

2. The right is reserved to plaintiff to enforce his legal mortgage against the property or its proceeds.

Judgment affirmed.